**COMMUNITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant,**

v.

**William ORONDORFF, d/b/a the Cookie Jar, Appellee.**

No. 81–5252.

United States Court of Appeals, Eleventh Circuit.

June 18, 1982.

Malin & Haley, Eugene Malin, Fort Lauderdale, Fla., for plaintiff-appellant.

Adams, Coogler, Watson & Smith, J. Burke Culler, West Palm Beach, Fla., for appellee.

Before MILLER, Judge *, TJOFLAT and CLARK, Circuit Judges.

MILLER, Judge:

This appeal is from a judgment for appellee, following a bench trial, on Count II of appellant's amended complaint,[1] seeking injunctive relief under Florida Statutes § 495.151[2] for injury to business reputation and dilution of the distinctive quality of appellant's service mark. We reverse.

As announced from the bench, the district court found that appellant is a federal savings and loan association and owns a 1976 federal registration for the service mark COOKIE JAR and jar design (for banking and savings and loan association services) used on one of its automatic teller machines located in one of its branch offices.[3]

There is no COOKIE JAR automatic teller at appellant's main branch, but all of appellant's eleven offices hand out literature containing appellant's service mark to depositors along with plastic cards that will activate the automatic teller machines. Across the street from the main branch is appellee's large billboard displaying a jar design and COOKIE JAR thereon, with the silhouette of a lady lying on top of the drawing.

Elsewhere on the billboard are "ANNIE'S COOKIE JAR," "Adult Entertainment," "The most fun you can have in town (with your clothes on!)."[4] The record shows that appellee's mark is also used on free drink cards, T-shirts, and matchbooks. The court further found that there was no confusion

---

* Honorable Jack R. Miller, Judge for the U. S. Court of Customs and Patent Appeals, sitting by designation.

1. Appellant does not argue on appeal Counts I (alleging infringement under 15 U.S.C. § 1114) and III (alleging unfair competition under common law). The action was brought in federal district court under 15 U.S.C. § 1114 and 28 U.S.C. § 1338.

2. Section 495.151 provides, in pertinent part: Every person ... adopting and using a mark ... may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any *similar* mark ... if it appears to the court that there exists a likeli-

hood of injury to business reputation or of dilution of the distinctive quality of the mark ... of the prior user, notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services. [*Emphasis added.*]

3. Appellant's mark is obviously a unique and strong mark. The district court commented that "the cookie jar is an excellent name for *that type of machine because of the obvious* symbolism of people keeping their money in there and being able to get it when they want to, and they hide it in there and it's safe."

4. Appellee's operation is a topless go-go bar.

over the services rendered by appellant and those of appellee. With these findings, the court invited legal memoranda from both sides, indicating it desired "major emphasis" on whether there had been "dilution of distinctive quality of … Plaintiff's mark … notwithstanding the absence of competition or of confusion."

In its conclusions of law, the district court stated: "The marks themselves, while similar, are not confusing as a matter of law." In holding that no legal injury had been shown, the court said that—

> [T]he law in this circuit is clear that relief will not lie under the [Florida] statute unless there is at least confusion as to the marks themselves, even if not as to the source of the goods or services. *Amstar Corp. v. Domino's Pizza Inc.*, 615 F.2d 252 [205 USPQ 969] (5th Cir. 1980) [*cert. denied*, 449 U.S. 899 [101 S.Ct. 268, 66 L.Ed.2d 129] (1980)] (interpreting a Georgia statute [Ga.Code Ann. § 106–115] identical in pertinent part to the one at issue here); *Holiday Inns v. Holiday Out in America*, 481 F.2d 445 [178 USPQ 257] (5th Cir. 1973) (holding Florida's antidilution statute not applicable due to lack of confusion in the marks themselves).

■ The dispositive issue is whether the district court erred in denying appellant relief under Florida Statutes § 495.151, notwithstanding that the marks of the parties are "similar," because there is no confusion as to the marks themselves.[5]

We are persuaded that the district court misapprehended the import of the *Domino's* and *Holiday Inns* cases, *supra*. With the *decisions* in those cases, we have no quarrel. In the *Domino's* case, the mark "Domino's Pizza," for use in the sale of fast-food delivered hot pizza pies, was clearly correct since

"Domino," outside plaintiff Amstar Corporation's sugars, was determined to have already become a "weak mark"; in other words, to have already become diluted. In the *Holiday Inns* case, the trial court (351 F.Supp. 537, 542, 174 USPQ 384, 387 (S.D. Fla.1972)) found that plaintiff Holiday Inns, Inc., failed to show that there was a likelihood of confusion between the marks of the respective parties ("Holiday Inn" and "Holiday Inn of America" vs. "Holiday Out" and "Holiday Out in America"); in other words, that the marks of the parties were not "similar." In both cases, the panels of the Fifth Circuit on appeal engaged in dicta in unnecessarily commenting that "the marks themselves are not confusing"—a factor totally absent from the state antidilution statutes involved and, indeed, contrary to the plain meaning of those statutes.[6] *See United States v. Second National Bank of North Miami*, 502 F.2d 535, 539–40 (5th Cir. 1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975).

It should be pointed out that the concept of confusion between marks without regard to source of services, as stated by the district court here in its conclusions of law, is incompatible with the concept of a service mark. Thus, 15 U.S.C. § 1127 and *Black's Law Dictionary* define "service mark" as—

> a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others.

*See also* E. Vandenburgh, *Trademark Law and Procedure*, § 1.30 (2d ed. 1968).

■ Somewhat anomalously, in the *Holiday Inns* case, the Fifth Circuit panel, supra at 450, 178 USPQ at 260, clearly and correctly described the concept of dilution as follows:[7]

---

5. As to appellant's allegation of injury to business reputation, the district court found only "one bit of evidence about a gentleman who asked if the plastic card [for use with appellant's automatic teller machines] entitled him to go across the street, and he laughed. It was said in a jocular vein …." We are satisfied that this is insufficient evidence of injury to appellant's business reputation.

6. "[W]here the likelihood of confusion test leaves off, the dilution theory begins." 2 J. McCarthy, *Trademarks and Unfair Competition* § 24:13 (1973).

7. We note that the dilution doctrine is not embraced by the Lanham Trademark Act of 1946. *R. G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 658, 204 USPQ 521, 527 (2d Cir. 1979); *Tiffany and Co. v. National Gypsum*

Dilution is a concept most applicable where a subsequent user uses the trademark of a prior user for a product so dissimilar from the product of the prior user that there is no likelihood of confusion of the products or sources, but where the use of the trademark by the subsequent user will lessen the uniqueness of the prior user's mark with the possible future result that a strong mark may become a weak mark.

Another good statement of the dilution doctrine was given by the First Circuit in *Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co.*, 165 F.2d 549, 553, 76 USPQ 146, 149–50 (1st Cir. 1948):

> [T]he "dilution doctrine," as it may be called, operates to extend the protection of the trademark law to the situation presented when similar marks are used on dissimilar goods, and ... it has no application when the question is whether the marks being used on goods of substantially the same descriptive properties are similar enough to cause confusion in the minds of consumers with respect to the source of the goods.... [T]he dilution doctrine operates to give the owner of a registered trade-mark the same protection against the use of his mark by others on goods of different descriptive properties. Thus the doctrine may be invoked to protect the owner of a mark for automobiles and airplanes from the use by another of a very similar mark for radio tubes ... or to protect the owner of a mark for fountain pens and similar writing instruments from the use by another of a very similar mark for safety razor blades.... But the marks must be deemed similar before the doctrine has any application.

*See also Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 399 N.Y.S.2d 628, 630, 369 N.E.2d 1162, 1164 (Ct.App.N.Y.1977), where the court, referring to New York's antidilution statute with provisions essentially identical to those

of the instant Florida statute (section 12 of the Model State Trademark Act), said:

> The purpose behind the enactment of this statute was the prevention of trade-mark or trade name dilution—i.e. "the whittling away of an established trade-mark's selling power and value through its unauthorized use by others upon dissimilar products." (N.Y.Legis.Ann., 1954, p. 49).

A similar purpose behind the Georgia statute was explained in *Augusta National, Inc. v. Northwestern Mutual Life Ins. Co.*, 193 USPQ 210, 222 (S.D.Ga.1976), where the court said that if the term "Masters" in "Ladies' Masters at Moss Creek Plantation" is used, "there is reasonable certainty that the value of plaintiff's mark will be eroded; a little now, more later, until the 'magic' of the Masters [Golf Tournament] will be mortally dissipated if not completely dispelled."

Appellee argues that "Appellant failed to produce evidence of any nature whatsoever to suggest actual or likely injury to itself, or ... dilution of its mark." However, we regard the exhibits of record, including photographs of appellee's billboard, as potent witnesses to the actual or likely "whittling away" of the unique character of appellant's mark.

In view of the foregoing, we hold that the district court erred in denying appellant relief under the Florida antidilution statute.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

*Co.*, 459 F.2d 527, 530, 173 USPQ 793, 796 (CCPA 1972).