**HARLEY–DAVIDSON MOTOR COMPANY and H–D Michigan, Inc., Plaintiffs,**

v.

**IRON EAGLE OF CENTRAL FLORIDA, INC., Defendant.**

No. 95–851–Civ–Orl–3ABF(22).

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 1, 1997.

Virginia B. Townes, Julie J. Fitzpatrick, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, for Harley–Davidson Motor Co.

Frederic Stanley, Jr., Law Office of Frederic Stanley, Altamonte Springs, FL, for Iron Eagle of Central Florida.

Virginia B. Townes, Julie J. Fitzpatrick, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, Joseph J. Bonk, Ann Arbor, MI, for H–D Michigan, Inc.

## ORDER

BAKER, United States Magistrate Judge.

This is an action for violation of federally registered trademarks and for false designation of origin, and related state law claims. The case was tried to the Court, without a jury, and is presently before the Court for a decision on the merits.[1] The Court makes the following findings of fact and conclusions of law.

### *The Parties*

Plaintiff Harley–Davidson Motor Company is a wholly owned subsidiary of Plaintiff H–D Michigan, Inc. Plaintiffs design, manufacture and distribute an internationally recognized line of motorcycles and motorcycle parts and accessories. H–D Michigan, Inc. is the owner of the federally registered trademarks which are the subject of this action.

Defendant Iron Eagle of Central Florida, Inc. (herein "Iron Eagle"), is a corporation which operates a single-location business specializing in the sale of used American motorcycles, including those manufactured by Harley–Davidson. Iron Eagle also services American motorcycles, and sells new motorcycle accessories. Iron Eagle does not sell new Harley–Davidson motorcycles and is not an authorized dealer of genuine Harley–Davidson parts.

### *The Marks*

The trademark and trade name "Harley–Davidson", owned by H–D Michigan, Inc. for the benefit of Harley–Davidson Motor Company, have been continuously used in commerce in connection with the motorcycle business operated by Plaintiffs. Plaintiffs own the following marks, which are the subject of the suit:

---

1. The parties consented to the exercise of jurisdiction by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and Rule 73, Fed. R. Civ. Pro.

| MARK | Registration No. | Reg. Date | Incontestible |
|---|---|---|---|
| HARLEY–DAVIDSON | 1,311,457 | Dec. 25, 1984 | April 17, 1990 |
| HARLEY–DAVIDSON | 1,450,348 | Aug. 4, 1987 | Nov. 12, 1993 |
| HARLEY–DAVIDSON | 1,471,644 | Jan. 5, 1988 | April 15, 1994 |
| HARLEY | 1,352,679 | Aug. 6, 1985 | Jan. 30, 1991 |
| HARLEY | 1,406,876 | Aug. 26, 1986 | April 28, 1992 |
| Harley–Davidson USA | 1,688,264 | May 19, 1992 | |
| Winged Design Harley–Davidson | 1,205,380 | Aug. 17, 1982 | Mar. 3, 1989 |
| Bar & Shield Design Harley–Davidson | 1,316,538 | Jan. 19, 1985 | Oct. 10, 1991 |
| Bar & Shield Design Eagle Iron | 1,316,576 | Jan. 29, 1985 | |

The trade names and marks appear as products names, service names and as logos for the Harley–Davidson family of products and services. The marks are used on a variety of goods, ranging from motorcycles and parts to jewelry and clothing. The Court finds that the marks identify a particular and specific motorcycling experience, unique to the Harley–Davidson motorcycle.

Harley–Davidson spends millions of dollars to advertise and promote products bearing their marks. As part of its marketing strategy, Harley–Davidson licenses the use of its trademarks and logos to manufacturers of clothing, jewelry, leather goods and other accessories. The licensed use of the mark is subject to strict quality standards and conformity to corporate policies regarding the use and display of the mark. Products so licensed bear the emblem "Official Licensed Product." Harley–Davidson invests significant amounts of time and money in monitoring the authorized use of its marks and seeking to prevent unauthorized use of its marks or products.[2]

### The Infringements

The principals of Defendant Iron Eagle, Matt and Karin Thilmony, were operating a motorcycle business known as "Thee Bike Week Store" in 1994. In response to the perception that the store was a bicycle shop, rather than a motorcycle business, the Thilmonys changed the name to "Iron Eagle of Central Florida, Inc." Iron Eagle displayed its new name prominently on the business signage, and used a logo which featured a winged circle with the name "Iron Eagle" written across the circle in the approximate location in which Harley–Davidsons appears on the Winged Design. In addition, Iron Eagle included in the logo the designation "Harley Specialists" and "Independant [sic] Dealer."

Iron Eagle placed advertisements in magazines and other media intended to appeal to the motorcycle enthusiast. These advertisements featured the Harley–Davidson Bar and Shield logo, the trade name "Iron Eagle" and the Iron Eagle logo, proclaiming "Harley Specialist." Iron Eagle is not an authorized Harley–Davidson dealer, but held itself out in its advertising as "Central Florida's Largest Independent Harley Aftermarket Superstore."

Iron Eagle used the Harley trade name in a number of ways. In February of 1996, Iron Eagle distributed a flyer advertising "Harley's at the Hard Rock"—an event apparently sponsored by Iron Eagle. Harley–Davidson sponsors a number of events

---

2. As demonstrated by Defendant's evidence, a quick search of the Internet suggests that Harley–Davidson's efforts in this regard are less than perfect.

through and for its Harley Owners Groups ("HOG's") and at various "Bike Week" gatherings. Harley–Davidson was not a sponsor or affiliate of the Hard Rock event and did not give permission for the use of the trademark or trade names.

The flyer advertising the event also stated that Iron Eagle had "Harley certified mechanics on premises." Only mechanics that currently work for authorized dealers are certified by Harley–Davidson.

Iron Eagle uses the Harley–Davidson name prominently in its signage outside the store and on the building itself.

Iron Eagle is selling Officially Licensed Product T-shirts and other garments, which it has altered by back-imprinting with the Iron Eagle logo, including the "Harley Specialists" language. Iron Eagle is not affiliated with Plaintiffs and has not been licensed or authorized by Harley–Davidson to use Plaintiffs' trademarks.

### Notice of Infringement

Shortly after the business name was changed to Iron Eagle, Plaintiff directed a cease-and-desist letter to Iron Eagle, objecting to the infringement of the Eagle Iron trademark. Additional letters were sent thereafter, complaining of the misappropriation of the registered trademarks in advertisements and the designation "Harley Specialist." Despite the demands, Iron Eagle did not voluntarily cease any of the objected-to conduct, until after suit was filed. Although Iron Eagle has since stopped some direct use of the Harley–Davidson logos, many of the alleged violations are continuous in nature, or have occurred after suit was filed.[3]

3. The "Harley's at the Hard Rock" event was held after suit was filed. Moreover, the building signage, certain advertisements including "Harley Certified Mechanics," and the use of the trade name "Iron Eagle," are among the continuing infringements complained of.

4. The parties did not discuss the possible application of the Federal anti-dilution amendments to the Lanham Act (15 U.S.C. § 1125(c)) that took effect during the pendency of this action.

### The Proof of Trademark Infringement [4]

Plaintiffs allege various infringements under the Lanham Act and state law. Plaintiffs contend that its trademark "Eagle Iron" is infringed by Defendant's use of the name "Iron Eagle." Plaintiffs assert that Defendants winged logo design infringes the Winged Design trademark owned by Harley. Plaintiffs also object to the unauthorized use of Harley trade names in its advertising, signage for the store, on T-shirts and for events. Finally, Plaintiffs argue that the totality of Defendant's conduct amounts to an attempt to palm itself off as being affiliated with or sponsored by Plaintiffs. Though the infringements vary, the analysis is similar as to each.

■ To prevail on the claims of infringement of the Eagle Iron mark, Plaintiff must demonstrate (1) that it is the prior owner of the mark, and (2) that the defendant's trade name or service mark is the same or confusingly similar to plaintiff's so that there exists a likelihood of confusion to consumers as to the proper origin of the services, such that a consumer is likely to believe that defendant's services are being sold with the consent or authorization of plaintiff, or that defendant is affiliated with plaintiff. *American United Life Insurance Co. v. American United Insurance Co.,* 731 F.Supp. 480, 481 (S.D.Fla. 1990). On the other trademark infringement claims, a plaintiff-registrant must demonstrate (1) that its mark was used in commerce by defendant without consent of plaintiff, and (2) that this unauthorized use was likely to cause confusion or mistake, or to deceive. *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491 (11th Cir.1983). *See also* 15 U.S.C. § 1114(1)(a). Also, it is well established that "falsely suggesting affiliation with the trademark owner in a manner likely to

How these amendments relate to state anti-dilution laws may be subject to debate. For "famous marks," this new statute eliminates the need for the mark holder to prove likelihood of confusion.

Because the parties neither briefed nor directed their proofs to the specific elements of the subsection, the Court will not rest its opinion thereon. Suffice to say, application of this statute to at least some of the Harley Davidson marks has the potential for broadening the scope of the protection available.

cause confusion as to source or sponsorship constitutes infringement." *Burger King,* 710 F.2d at 1492 § 2, *quoting Professional Golfers Ass'n of America v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir. 1975).

■ In determining whether a defendant's use of a term creates a likelihood of confusion, courts look at seven factors: (1) the type of mark used; (2) the similarity of the mark; (3) the similarity of service; (4) the similarity of purchasers; (5) the similarity of advertising media used; (6) the existence of actual confusion; and (7) the defendant's intent. *Conagra, Inc. v. Singleton,* 743 F.2d 1508, 1514 (11th Cir.1984). In the Eleventh Circuit, "the type of mark and evidence of actual confusion are the most important factors." *Dieter v. B & H Industries of Southwest Florida, Inc.,* 880 F.2d 322, 326 (11th Cir.1989), *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990).

■ Here, the parties stipulated that the "Winged Design" mark was a fanciful mark, and thus considered a strong mark, entitled to the highest level of protection (Doc. No. 53, pg.10). The parties dispute the level of protection accorded to "Eagle Iron," with Plaintiffs urging that the mark is fanciful or arbitrary, and Defendant characterizing the mark as the weaker "suggestive." While the use of the term "iron" may, in itself, be suggestive of a solid product, when coupled with the term "eagle," the mark becomes less suggestive and more arbitrary.[5]

■ Defendant does not dispute ownership of the marks, and does not deny its own actions with respect to the marks. Rather, Defendant asserted at trial that: 1) there was no confusion or likelihood of confusion caused by Defendant's use of the marks; 2) the mark "Eagle Iron" was in the process of being abandoned by Plaintiffs, thus justifying the use; and 3) Plaintiffs' true aim is to deter competition and drive Defendant out of business. None of these defenses was proven at trial.

The evidence at trial established that customers regularly mistook Iron Eagle to be an authorized Harley–Davidson dealer. Iron Eagle employees testified that they were instructed to disavow any affiliation with the Harley–Davidson company, *if the customer asked,* and every employee that testified said that customers *did* ask. Even Mr. Thilmony testified that customers asked if he was affiliated with Harley–Davidson and if he could get the customer a new Harley.[6] Ms. Thilmony stated that she was asked for Harley catalogs. A customer of Iron Eagle testified that Iron Eagle used "trained Harley folks" in the service department. Significantly, customers and employees also testified that they were aware of Plaintiffs' "Eagle Iron" line of motorcycle parts and accessories. While Iron Eagle may have explained to anyone who inquired that it was not affiliated with Harley–Davidson, and particularly knowledgeable Harley–Davidson enthusiasts may "know" that Iron Eagle is not a Harley dealership, it is clear from the testimony of the employees, the owners and the customers that there is a likelihood of confusion, and, indeed, actual confusion arising out of the Defendant's use of the marks.

As for Defendant's claim of abandonment of the Eagle Iron mark, the evidence at trial showed that parts bearing the Eagle Iron mark were still being sold locally and throughout the country. Although Eagle Iron was not shown to be as strongly marketed as the Harley–Davidson Genuine Motor Parts and Accessories line, the mark is valid and entitled to protection.[7]

Defendant presented a general equitable argument that it is not fair to deprive it of its corporate name and that Plaintiffs are actually seeking to put them out of business. Apart from the issue of legal entitlement to the name, the Court notes that the company has changed its name previously without going out of business. Moreover, Plaintiffs complained of the Iron Eagle name within

---

5. The mark must be analyzed with respect to its use. The mark "Eagle Iron" might be descriptive or suggestive, for example, if applied to American made golf clubs.

6. Only authorized Harley–Davidson dealers can sell new Harley motorcycles.

7. There is no occasion in deciding the issues before the Court in this case whether Plaintiff's repackaging of Harley and Eagle Iron parts was confusing or deceptive as to consumers.

months of the name change. Any hardship that may result in changing names now is the result of Iron Eagle's insistence on retaining a name it knew was claimed by Plaintiffs. The equities are in Plaintiffs' favor.

### · *Dilution* [8]

Florida's Antidilution Statute, Fla. Stat. § 495.151, allows the Court to enjoin subsequent use of the same or similar mark if the Plaintiff proves:

> that there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark ... notwithstanding the ·absence of competition between the parties or of confusion as to the source of goods or services. Fla. Stat. § 495.151.

■ The Court has found that the marks are distinctive and entitled to ·protection. The Court has also found that Defendant has used the same and similar marks. Although the Court finds confusion is present, neither confusion nor competition are required under the state law. Considering the similarity of the parties' businesses and the pervasive nature of the infringements, there can be no doubt that the integrity of the marks is threatened by Defendant's misuse, resulting in a likelihood of injury to Plaintiff's business reputation and a dilution of the commercial value of the mark. However, the Florida antidilution statute is not intended to apply to the use of a similar mark on similar goods.[9]

· In *Community Federal Savings and Loan Assoc. v. Orondorff,* 678 F.2d 1034 (11th Cir. 1982), the Eleventh Circuit discussed Florida's antidilution statute in detail. The Court noted that the dilution doctrine was not embraced by the Lanham Trademark Act, and quoted the Fifth Circuit's "clear and correct" description of dilution:

> Dilution is a concept most applicable where a subsequent user uses the trademark of a prior user for a product so dissimilar from the product of the prior user that there is no likelihood of confusion of the products or sources, but where the use of the trade-

mark by the subsequent user will lessen the uniqueness of the prior user's mark with the possible future result that a strong mark may become a weak mark. 678 F.2d at 1037, *quoting Holiday Inns, Inc. v. Holiday Out in America,* 481 F.2d 445, 450 (5th Cir.1973) This dilution concept is meant to apply to similar marks on *dissimilar* products. The doctrine "has no application when the question is whether the marks being used on goods of substantially the same descriptive properties are similar enough to cause confusion in the minds of consumers with respect to the source of the goods". *Community Federal,* 678 F.2d at 1037 (internal citation omitted). The antidilution statute is a broader claim than infringement, protecting the distinctiveness of the mark by prohibiting its use on products and services completely different from the original. *Freedom Savings and Loan Ass'n v. Way,* 757 F.2d 1176, 1186 (11th Cir.1985), *cert. denied,* 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 110 (1985). *But see Chassis Master Corp. v. Borrego,* 610 F.Supp. 473 (S.D.Fla. 1985).

As applied here, it is clear that the parties sell similar products (motorcycles, parts and accessories, service) and Defendant's misuses of the marks on these products does not merely "dilute" Plaintiffs' marks, it infringes them. As the dilution of the marks is addressed and remedied by federal trademark law, it is not necessary to seek the broader protections of the antidilution act.

### *Attorney's Fees*

■ Plaintiffs request an attorney's fee award, pursuant to 15 U.S.C. § 1117, which gives the court discretion to award reasonable attorney's fees to the prevailing party "in exceptional cases." The Eleventh Circuit has interpreted this provision to allow fees to a prevailing party where there is evidence of fraud or bad faith. *Safeway Stores, Inc. v. Safeway Discount Drugs,* 675 F.2d 1160, 1166 (11th Cir.1982). While the Court finds no evidence of fraud, there is sufficient evi-

---

8. See footnote 3, *supra.*

9. Other antidilation statutes may focus on "blurring" the distinctive origin of goods. *See McCar-*

*thy on Trademarks and Unfair Competition* § 24:94.

dence of bad faith to make an award of fees appropriate. Defendant's principals were avid motorcycle enthusiasts who were aware of Plaintiffs' marks and the goodwill surrounding the Harley mystique.

Defendant made as much use of the Harley–Davidson marks as it could while hoping not to run afoul of infringement concerns. Defendant is permitted to advertise its lines of business including the availability of parts and equipment specially made for Harley motorcycles. Originally, Defendant did not observe or make any effort to confine itself to proper use of the Harley–Davidson mark. Even after express notice from Plaintiffs, Defendant's efforts were grudging and half hearted.

Iron Eagle's conduct, taken as a whole, shows a disregard for Plaintiffs' rights, sufficient to support a finding of bad faith.[10] Iron Eagle need not get permission from Plaintiffs for all of its marketing activities. However, when it makes use of someone else's, Defendant must exercise greater care and restraint or else reach an accommodation with the mark holder.

### Conclusions of Law

1. Defendants' acts as set forth herein constitute infringement of the registered trademarks, including "Harley," "Harley–Davidson," the "Bar and Shield," the "Winged Design," and "Eagle Iron."

a.) The Iron Eagle business name and logo are both colorable imitations of Plaintiffs' Eagle Iron trademark and the Winged Design.

b.) Plaintiffs and Defendants are engaged in selling the same products (motorcycles, service and accessories) to the same consumers (the motorcycle enthusiast). The parties advertise their products and services through similar media, directed to the motorcycling public. The sale of Harley-Davidson products by a business with a name confusingly similar to a trademark adopted for use by authorized dealers, increases the likelihood of confusion.

c.) Defendant had knowledge of Harley–Davidson trademarks and advertising practices.

d.) Defendant's unauthorized uses of Plaintiffs' trademarks have resulted in actual confusion as to whether Iron Eagle and its business operations are sponsored or authorized by Plaintiffs. As argued by Plaintiffs' counsel, Iron Eagle has "cloaked itself in Harley-ness," and created a false impression of Harley sponsorship or endorsement.

2. The infringements were not innocent or inadvertent. Defendants used the marks prominently (in large display on the building where the business operated, in flyers, advertisements and in the yellow pages listing, on business cards) and frequently. The Court finds such pervasive use establishes an intent to appropriate the Harley mystique, without license or permission to do so.

3. This is an exceptional case, under 15 U.S.C. § 1117, and Plaintiffs should recover reasonable attorneys' fees.

Wherefore, Plaintiffs having demonstrated that they are entitled to a permanent injunction, it is hereby **ORDERED** and **ADJUDGED** as follows:

Final Judgment shall be entered in favor of the Plaintiffs and against Defendant.

A. The Defendant, its officers, directors, agents, employees and all persons acting on its behalf, are permanently enjoined from using the winged logo and the words "Iron Eagle" or any colorable imitation thereof in connection with its business. In ensuring compliance with the above, the Defendant is hereby directed to effect a change in its corporate name with the Florida Department of State within 120 days of the entry of the permanent injunction, so that the words "Iron Eagle" are no longer a part of its name. Until the effective date of the change of its corporate name, Defendant is hereby required to place on the face of all correspondence, invoices, envelopes, business cards or business documents of whatever nature, a disclaimer of affiliation with Plaintiffs;

Additionally, Defendant must:

---

**10.** Despite adamant objections from Plaintiffs, Iron Eagle continued to sell, for a profit, the altered OLP T-shirts, up through the trial. Plaintiffs also introduced numerous infringing print advertisements that ran after suit was filed.

1. Remove all signage from its place of business which contains either the name or the logo.

2. Surrender to Plaintiffs for destruction all products, business forms, cards or advertisements containing either the enjoined name or logo.

B. Defendant shall immediately cease and desist from altering in any way any Harley–Davidson Official Licensed Product and shall surrender to Harley–Davidson for destruction any product in its care, custody or control which has been so altered.

C. Defendant is hereby enjoined from using any Harley–Davidson trademark in any advertisement for its business, except as set forth herein:

1. The registered trademark shall not be in type greater than one-half the size of the business name.

2. The registered trademark shall be in the same size, style and color or type of the remainder of the information surrounding the trademark, which information shall be limited to fair advertisement of the offering of Harley–Davidson products as a line of merchandise.

3. No Harley–Davidson registered trademark shall be used in isolation; only informational uses of the trademarks shall be permitted.

4. No Harley–Davidson registered trademark shall be used to describe or define any aspect of Defendant's business.

D. Defendant is hereby enjoined from holding itself out as having Harley–Davidson Certified Mechanics in its employ.

The Court reserves jurisdiction to award attorneys fees and costs by separate order, upon proper motion and submission of appropriate affidavits, within 14 days of the date of this order. Counsel for the parties shall confer in good faith in an effort to agree on the amount of fees and costs prior to the filing of the motion.

The Clerk is directed to enter a final judgment in accordance herewith.