**BURGER KING CORPORATION,**
**Plaintiff-Appellee,**
**Cross-Appellant,**

v.

**Gerald A. MASON, et al.,**
**Defendants-Appellants,**
**Cross-Appellee.**

**No. 87–5008.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 20, 1988.

Thomas J. Schuchert, Vicki K. Horne, Pittsburg, Pa., Richard J. Rankin, Grand Rapids, Mich., for defendants-appellants, cross-appellee.

Lee N. Abrams, T. Mark McLaughlin, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Before RONEY, Chief Judge, CLARK, Circuit Judge, and MORGAN, Senior Circuit Judge.

PER CURIAM:

This action is before this Court for the second time, after nearly ten years of litigation, to determine the appropriateness of a damage award rendered by the district court. The contested judgment arises out of a suit brought by the Burger King Corporation (BKC) against a group of investors, who were Burger King franchisees, collectively referred to as Mason. Mason continued to operate several Burger King restaurants after the plaintiff had given notice of the termination of the franchises. The plaintiff sought damages under the Lanham Act for wrongful use of its trademark. Because the district court properly exercised its discretion in assessing damages under the Lanham Act, the judgment of the district court is affirmed under the established law of this Circuit.

Through an extended business relationship, Mason had acquired the right to establish Burger King restaurants in two major metropolitan areas. Over the years, Mason purchased at least twenty-seven Burger King franchises under separate agreements. The relationship between BKC and Mason apparently began to deteriorate in 1977 after BKC notified Mason of its intention to cancel two exclusive development agreements. As relations soured, BKC brought suit seeking a declaration that it had properly terminated those development contracts. Mason responded with a counterclaim for reinstatement and damages for the revocation. Then in 1979, BKC informed Mason that it was unilaterally terminating all twenty-seven of its Burger King franchises for Mason's failure to comply with the terms of its franchise agreements. Over the course of the ensuing litigation, it has been determined that only thirteen of the contracts were rightfully terminated by BKC. *Burger King Corp. v. Mason,* 710 F.2d 1480, 1485 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). On that previous appeal, this Court remanded the case to the district court for a finding regarding Florida law and for a determination of the appropriate relief under the Lanham Act with respect to Mason's infringement of BKC's trademark at the thirteen restaurants. Both parties now appeal the district court's order.

The damage provision of the Lanham Act entitles a trademark holder to recover, among other things, the profits earned by a defendant from infringement of the mark.[1]

---

1. When a violation of any right of the registrant of a mark ... shall have been established ... the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages.... In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find

15 U.S.C.A. § 1117. The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party. *See, e.g., Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir.), *cert. denied*, 391 U.S. 966, 88 S.Ct. 2037, 20 L.Ed.2d 879 (1968).

The statute provides that a damage award may be adjusted if the profits prove to be inadequate or excessive. This remedial accommodation clearly commits considerable discretion to the trial judge. Review of the trial court's exercise of its discretion is under the abuse of discretion standard, wherein the decision will not to be disturbed, unless, upon a weighing of relevant factors, there is a definite and firm conviction that the court below committed a clear error of judgment. *See Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 917 (Fed.Cir.1984); *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir.1982).

■ Contrary to Mason's argument, the law in this Circuit is well settled that a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits under § 35 of the Lanham Act, 15 U.S.C.A. § 1117. *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1487 (11th Cir.1987). An accounting for profits has been determined by this Court to further the congressional purpose by making infringement unprofitable, and is justified because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future. *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 585 (5th Cir.1980); *see Maier Brewing Co.*, 390 F.2d at 121 (citing S.Rep. No. 1333, 79th Cong., 2d Sess. 1–2 (1946)).

Nor is an award of profits based on either unjust enrichment or deterrence dependent upon a higher showing of culpability on the part of defendant, who is purposely using the trademark. In *Wolfe v.*

*National Lead Co.*, 272 F.2d 867 (9th Cir. 1959), *cert. denied*, 362 U.S. 950, 80 S.Ct. 860, 4 L.Ed.2d 868 (1960), *overruled in part on other grounds, Maier Brewing Co. v. Fleischman Distilling Corp.*, 359 F.2d 156, 165 (9th Cir.1966), the Ninth Circuit rejected good faith as a defense to an accounting for profits. There the trademark infringer contended that he should not be held accountable for the profits he earned after he consulted an attorney who advised him that he was not in infringement. The Ninth Circuit, in rejecting this claim, noted that the defendant

> had full knowledge of the facts and [plaintiff's] claim of infringement. Whether he believed himself to be within the law or not, he was knowingly and deliberately cashing in upon the good will of appellee. This is such an infringement as will justify an accounting of profits.

272 F.2d at 871. *Wolfe* has been cited with approval by this Court in *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir.1983).

At the commencement of this litigation in August 1979 before a U.S. Magistrate, BKC sought an injunction against defendants' continued use of its trademark. Prior to a court hearing on injunctive relief, BKC agreed that defendants could maintain the *status quo* in continuing operation of the restaurants during the litigation, without prejudice to plaintiff's right to claim damages if it prevailed in the lawsuit.

■ Of the thirteen restaurants found to infringe on BKC's marks, six turned a profit over the period of litigation. The district court concluded that in determining the profits for which defendants would be held accountable, the profits on the six restaurants could not be offset by the losses incurred at the other seven restaurants, which were owned by a different grouping of the defendants. Defendants contend that the thirteen restaurants should be con-

that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either

of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.
15 U.S.C.A. § 1117.

sidered as a unit because of the *status quo* agreement. Mason asserts that absent this *status quo* agreement, it would have closed down the unprofitable restaurants rather than manage all twenty-seven. A number of reasons support the decision to consider each of the thirteen restaurants as a separate instance of trademark infringement.

*First,* although the district court noted that BKC had acquiesced in Mason's operation of the restaurants, each individual restaurant was operated according to a separate franchise agreement with BKC and not under any alleged agreement coordinating all twenty-seven.

*Second,* Mason sought and was denied renewal of the franchise agreement governing Restaurant # 164 in Harrisburg, Pennsylvania because it applied for renewal in an untimely fashion. In the course of this application defendants never made reference to any overarching agreement between the parties that would have mandated renewal.

*Third,* defendant Donald Szabo's unilateral closing in March 1980 of Restaurant # 1382 in Independence, Missouri further undercuts defendants' argument that all twenty-seven restaurants were being operated as a single unit. Defendant Szabo testified that he closed this restaurant at BKC's request, but made no reference at that time to any perceived need to operate all twenty-seven restaurants as a single unit.

*Fourth,* throughout the course of the litigation the dispute between the parties was considered on a restaurant by restaurant basis.

*Fifth,* the ownership interests differed significantly from restaurant to restaurant among the thirteen. For example, Defendant Richard Peterson had substantial ownership interests in profitable Restaurants in Mechanicsburg and Hershey, Pennsylvania (## 285 and 1055) but no ownership interest in the unprofitable Lafayette, Indiana Restaurant (# 1091) where other defendants infringed upon BKC's marks. Defendant Szabo was a principle owner of the two profitable Johnstown, Pennsylvania Restaurants (## 597 and 1253), but

similarly had no interest in Restaurant # 1091 in Lafayette, the significant losses of which he now seeks to offset against the profits he made at the two Johnstown Restaurants.

*Sixth,* the district court held that BKC had properly terminated each of the thirteen individual franchise agreements, and listed the specific restaurants by number. *Burger King Corp. v. Mason,* No. 78–2932–Civ-EBD (S.D.Fla. December 16, 1981), *aff'd,* 710 F.2d at 1488–89.

*Seventh,* the district court concluded that by its own conduct Mason agreed to BKC's reservation of its right to obtain relief against Mason for the post-termination operation of each of those restaurants.

*Eighth,* the district court noted that if the unprofitable restaurants were to be offset against the profitable endeavors in determining the profits owed BKC, Mason would be rewarded for the very mismanagement of which BKC had initially complained.

■ The district court did allow Mason to offset the unprofitable years of a given restaurant against the profitable years at that particular restaurant. BKC argues this was reversible error. BKC asserts that it is Mason's burden to prove that the losses from prior years helped to generate profits in later years. Admittedly, some of the same arguments used to justify the denial of offset between restaurants could have been used to justify the denial of an offset from one year to the next at each of the thirteen restaurants. The Lanham Act, however, confers broad discretion upon the district court to fashion the assessment of damages "according to the circumstances of the case," 15 U.S.C.A. § 1117, and it is the character of the conduct surrounding the infringement that is relevant. *Champion Spark Plug v. Sanders,* 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947). Thus, it is the district court's assessment of the particular conduct involved that governs the exercise of its discretion in fixing an appropriate remedy. The district court has the statutory authority to "enter judgment for such sum as the court

shall find to be just, according to the circumstances of the case." 15 U.S.C.A. § 1117. As we held, when this case was before us initially, "all monetary awards under Section 1117 are 'subject to the principles of equity,' [and] contrary to the assertions of both parties, no hard and fast rules dictate the form or quantum of relief." *Burger King*, 710 F.2d at 1495 n. 11. Based upon the proper standard of review of the district court's discretion, the decision of the district court as to these matters is due to be affirmed.

Both BKC and Mason allege a number of other claims capable of relatively cursory disposition. The Lanham Act provides that a "defendant must prove all elements of cost or deduction claimed." 15 U.S.C.A. § 1117. Defendants have failed to show that the district court committed clear error in determining the allowable deductions. Similarly, BKC has been unable to show that the district court clearly erred in allowing deductions for payments made to Defendants Gerald Mason and Wesley Hardy.

This case was remanded to the district court under an expansive mandate to determine the appropriate relief under the Lanham Act. *Burger King*, 710 F.2d at 1499. Since defendants never suggested to the district court that an award of prejudgment interest was inconsistent with the scope of that mandate, they will not be heard to raise this argument on appeal.

The district court was well within its authority in awarding post–1981 attorney's fees, as a trial court is free to pass upon any issue not expressly or impliedly disposed of on appeal. *Foley v. Smith*, 437 F.2d 115, 116 (5th Cir.1971). The district court was justified in concluding that BKC was entitled to an award of these fees.

The district court acted within its discretion in denying BKC's request for attorney's fees for its appeal on the issues relating to the portions of the franchise agreements which obligated defendants to pay the attorney's fees that BKC incurred in enforcing its rights thereunder. While the district court awarded fees incurred in the trial court from December 1981 through October 1985, it denied BKC indemnification for fees incurred on appeal. *Ohio Realty Inv. Corp. v. Bank of West Palm Beach*, 300 So.2d 679, 682 (Fla.1974); *see Vantage Broadcasting Co. v. Wint Radio, Inc.*, 496 So.2d 969, 969 n. 1 (Fla. 1st D.C. A.1986) (noting that this rule has since been superseded by § 59.46 Fla.Stat.Ann., as to all contracts entered into after October 1, 1977, but controls all cases in which the promissory note was executed before the statutory date). The court determined that there was no clear indication that the parties intended the contractual provision to cover fees on appeal. Appellants have failed to convince this Court that there was any error in that decision.

AFFIRMED.