**REMCRAFT LIGHTING PRODUCTS, INC., Plaintiff,**

**v.**

**MAXIM LIGHTING, INC., Defendant.**

**No. 87–2436–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Feb. 22, 1989.

Edward M. Joffe, Miami, Fla., for plaintiff.

Richard H. Zaitlen, Los Angeles, Cal., Jeffrey M. Weissman, Miami, Fla., for defendant.

## MEMORANDUM OPINION

SPELLMAN, District Judge.

### ORDER DENYING SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon the Defendant's Motion for Summary Judgment. The Defendant argues that the undisputed facts in this case require that summary judgment be granted in the Defendant's favor.

*Background*

The Plaintiff (Remcraft) sued the Defendant (Maxim) for permanent injunctive relief and for money damages based upon alleged trade dress infringement under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). There are three lamps which are in dispute: 1) the Remcraft Swedish Modern bullets; 2) the Remcraft Cylinder bullets; and 3) the Remcraft PAR Holders. The Plaintiff alleges that each bullet fixture incorporates a uniquely indentifiable combination of features, forms, shapes and sizes which are identified with Remcraft. Each lamp has three distinct elements: the hood (or shade), the swivel system, and the canopy (or base).

*Argument*

There are three fundamental elements which must be established in order to prevail on an action for false designation of origin pursuant to Section 43(a) of the Lanham Act. Here, the Plaintiff argues that the Defendant has infringed on the Plaintiff's "trade dress rights." P must therefore establish:

1) that the overall appearance of its lighting fixtures (i.e., its overall trade dress) is primarily non-functional;

2) that such overall appearance is inherently distinctive or has acquired secondary meaning; and

3) that there is a likelihood of confusion between P's fixtures and D's fixtures.

The Defendant asserts that the uncontroverted evidence shows that the Plaintiff cannot establish these elements.

### 1) Whether the overall appearance of its lighting fixtures is primarily non-functional

■ A product cannot be afforded trade dress protection if its features are not primarily non-functional. A feature is primarily non-functional if, when omitted, nothing of substantial value in the goods is lost. The feature is functional if it is essential to the use or purpose of the article. *Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966 (11th Cir.1983).

■. "Trade dress" involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques. *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir.1986). The Plaintiff claims that the three disputed lamps, in their entirety, are non-functional, and thus, all elements, components, aspects and features of the Remcraft lighting products are primarily non-functional.

The Defendant states that each of the three basic features which make up each of the lamps must be looked at separately and argues that those elements, individually, are clearly functional.

The three basic features of each of the three lamps are the shade, the swivel, and the base. The Defendant argues that the shape of each of these features is functional. For example, the Defendant argues that the shade is functional because it helps protect the bulb and direct the light. The lamps at issue use a cylinder-shaped shade, a cone-shaped shade and a PAR-bulb holder. The Defendant asserts that these are basic and common shapes and that they are therefore functional. The Defendant argues that the swivel is functional because it connects the lamp to the wall. The base is functional because it covers the opening in the wall or other mounting surface.

The Plaintiff first argues, in response, that functionality in the trademark sense is not defined as in ordinary usage. *Jordan International, Inc. v. United Industries Sales Organization, Inc.*, 699 F.Supp. 268, 270 (S.D.Fla.1988). Further, functionality is a question of fact. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 982 & n. 26 (11th Cir.1983). Here, although the fixtures themselves are functional, their design is aesthetic and/or decorative. Further, even if individual elements of packaging are functional, this does not render the trade dress as a whole unprotectible. *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir.1986). The functionality test applies to the product as a whole, not to any one specific part of a product.

■ The issue before this Court is whether the *particular* design which the P seeks to protect is functional. Therefore, it is not the shades, swivels or canopies which the Plaintiff seeks to protect, but P's unique *design* of these elements. These elements can be designed in many different ways to work just as effectively. Thus, the issue is whether the elements individually, and as used as a whole, are non-functional *in their design*. This is clearly a disputed issue of fact between the parties.

### 2) Whether the overall appearance is inherently distinctive or has acquired secondary meaning
#### Inherently Distinctive

■ In order to be inherently distinctive, a nonfunctional trade dress must inherently serve as an indication of the origin of the goods. *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d at 1536. Basic geometric shapes are generally not considered inherently protectible. *Brooks Shoe Manufacturing Company, Inc. v. Suave Shoe Corp.*, 716 F.2d 854, 858 (11th Cir.1983).

■ The Plaintiff argues that its trade dress, the lamps as a whole, are inherently distinctive and thus, secondary meaning does not need to be proved. *Ambrit*, 812 F.2d at 1535–36; *University of Georgia Athletic Association v. Laite*, 756 F.2d 1535, 1541 & n. 14 (11th Cir.1985). The test for distinctiveness typically involves the following factors: whether the trade dress is a common basic shape or design, whether it is unique or unusual in the field, and whether it is a mere refinement of a

well-known form or ornamentation. *Brooks Shoe,* 716 F.2d at 857.

The Defendant argues that the Plaintiff uses geometric shapes that are commonly used in the product market. Further, the Defendant argues that the end user of the product, the retail consumer, does not recognize the product as belonging to the Plaintiff.

The Plaintiff contends that its Swedish modern bullet or hood was developed for aesthetic appeal and was influenced by Scandanavian architecture and design of the 1950's and 1960's. The swivel system has a decorative shape and competing lighting companies use swivels which are distinguishable. The swivel and the canopy use operating knobs made of a hard plastic which is color coordinated with the rest of the fixture with a pebble texture on the face and serrations around the edge. The canopy is deeper than is required by utility and is designed to give the fixture a feeling of balance and strength. The swivel system is mounted off center, a feature which is unusual and which is solely for aesthetic purposes. The Plaintiff asserts that those in the industry have no problem identifying the Plaintiff's product as distinctive.

The Defendant's arguments are without merit. First, the Defendant fails to support its position that each element or part of the lamp must be proven to be distinctive, instead of the lamp as a whole. Second, the Defendant argues that there are many similar designs in the market. The real issue is not whether other similar fixtures exist, but rather whether the Remcraft design is sufficiently distinct that it can be differentiated from other products. The question of whether the product is inherently distinctive is therefore a question of fact.

### Secondary Meaning

The Defendant also contends that the Plaintiff cannot establish secondary meaning. "To establish secondary meaning, the plaintiffs must show that the primary significance in the minds of the consuming public is not the product itself but the producer." *Brooks Shoe,* 716 F.2d at 857,

n. 7. Here, the Plaintiff's own witnesses admit that the primary significance in the minds of the consuming public is the product and not the producer. Therefore, the Plaintiff cannot produce any evidence that any consumers rely on shape alone, overall appearance or any attribute of any of the maps to identify the source of the product.

■ The P argues in opposition that the relevant buyer class identifies the trade dress at issue with Remcraft. A trade dress becomes recognized by the relevant buyer group as an identification of the source of the product through extensive use by a single supplier. The Plaintiff argues that the relevant buyer class for its lamps is principally at the wholesale level, the owners of lighting showrooms and electrical supply houses. Thus, the question is not whether the general public, but whether the relevant buyer class associates Remcraft's name with the product or its source. *American Association for Advancement of Science v. Hearst Corp.,* 498 F.Supp. 244, 257 (D.D.C.1980).

Proof of secondary meaning can be provided by either direct of circumstantial evidence. *Isaly Company v. Kraft, Inc.,* 619 F.Supp. 983, 990 (M.D.Fla.1985). The trier of fact must consider the length of time and manner of its use, the nature and extent of its use and efforts made in order to promote a conscious connection in the public's mind between the mark and the particular source of origin. *Id.*

The Plaintiff claims that the evidence of secondary meaning among the wholesalers is overwhelming. The Plaintiff has a number of depositions for use at trial in which the witnesses identified the design of the fixtures with the Plaintiff. Additionally, the Plaintiff advertises its products in numerous trade show activities and trade journals and features the design of one of the disputed lamps, the Swedish modern bullet, as its logo on its stationery and other business documents.

Additionally, the Plaintiff contends that it has used its lighting fixtures in the same form since 1979. This exclusive continuous use is strong circumstantial evidence that secondary meaning has attached to the Plaintiff's trade dress.

Evidence of intentional copying is also probative of secondary meaning. *Brooks Shoe*, 716 F.2d at 860. The Defendant admits that it intentionally copied the design. The Plaintiff contends that the Defendant targeted the Plaintiff's home base for sales and set its pricing with an intent to undercut the Plaintiff's prices. The Plaintiff further claims that the Plaintiff's existing customers were called on and that the Defendant's fixtures were marketed as a Remcraft look-alike.

Again, the Defendant's arguments are without merit. First, the relevant buyer group in this case is not the end user but instead is the group made up of the wholesale customers, the lighting showrooms and the electrical supply houses. Second, the Defendant argues, without authority, that secondary meaning is an analysis of various elements of the product instead of the product as a whole. This argument cannot be supported.

The issue of secondary meaning is purely factual. The Plaintiff has asserted more than sufficient disputed facts to defeat the Defendant's Motion for Summary Judgment on this issue.

### 3) Whether there is a likelihood of confusion between the Plaintiff's fixtures and the Defendant's fixtures

■ The Defendant argues that even if the Plaintiff can prove that its lamps are primarily nonfunctional, and that they are inherently distinctive or have acquired secondary meaning, the Plaintiff still cannot show that there is any likelihood of confusion. Likelihood of confusion requires that the fact finder evaluate a number of elements, including the strength of the trade dress, the similarity of design, the similarity of the product, the similarity of outlets and purchasers, the defendant's intent, and actual confusion. *Ambrit*, 812 F.2d at 1538.

The Defendant argues that consumers do not recognize or identify any one company with the outdoor lighting fixtures at issue in this case. Therefore, the Plaintiff's trade dress is very weak and entitled to very limited protection. Additionally, while the Plaintiff's lamps and the Defendant's lamps are very similar, there are many other competitors that use the same or similar designs.

Both the Defendant and the Plaintiff sell the lamps to retailers and dealers who in turn sell to general consumers. Thus, the "universe" that must be looked at is the "universe" of the general consumer. The likelihood of confusion need not occur at the wholesale level when the end user will be confused. *Mastercrafters Clock and Radio Company v. Vacheron & Constantin–Le Coultre Watches*, 221 F.2d 464, 466 (2d Cir.1955).

The Defendant uses its own name on invoices, hang tags, labels, stickers, etc. Such actions not only negate intent, they tend to establish no likelihood of confusion as to source. *Intepart Corp. v. Italia*, 777 F.2d 678, 683 (Fed.Cir.1985).

■ The Plaintiff argues that the Defendant's misconduct in intentionally copying the Plaintiff's trade dress is sufficient in itself "to justify the inference that there is confusing similarity." *Ambrit*, 812 F.2d at 1542. The Plaintiff asserts that the Defendant wanted to benefit from the good will of the Plaintiff and consciously and deliberately copied its trade dress for that reason. Where such an intent to benefit exists, a presumption is raised that customers will in fact be deceived. *Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1135–36 (2d Cir.1982).

The similarity of products, retails outlets and purchasers in this case are virtually identical. The testimony, in depositions, of experienced professionals revealed that they could not distinguish between the products and were of the opinion that a strong likelihood of confusion existed. The Defendant's own representative believed that the Defendant's bullet was a Remcraft.

There is deposition testimony that the two products would not be offered at the same store, but would be offered by stores in close geographic proximity. Because the products look identical, the consumer, seeing both products at different stores, might believe that they were the same product made by the same company and would accordingly select the product offered for sale at less money. This would

arguably force the retailers to buy the Defendant's product at the lower price in order to remain competitive. Further, although the packages between the two products differ, a consumer does not see the package until after the purchase is made. Therefore, packaging has no effect on the decision to purchase the product in a lighting showroom.

The Plaintiff admits that it has not uncovered any evidence of actual confusion, but such evidence is not necessary to a finding of likelihood of confusion. *E. Remy Martin & Co. v. Shaw–Ross International Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir.1985). Based on the Plaintiff's evidence as discussed above, a reasonable finder of fact could find that a likelihood of confusion exists.

Accordingly, taking the evidence in the light most favorable to the non-moving party, genuine issues as to several material facts still exist and must be resolved before a decision on the merits can be reached. Accordingly, summary judgment is not proper. It is hereby

ORDERED AND ADJUDGED that the Motion for Summary Judgment is DENIED.

DONE AND ORDERED.